## LONG BELL LUMBER CO. v. FIRST NAT. BANK OF DRUMRIGHT.

(Circuit Court of Appeals, Eighth Circuit. August 11, 1924.)

No. 6519.

Principal and agent ⬤133—Bank honoring agent's overdraft in favor of principal held not entitled to recover amount thereof from principal.

Bank which paid overdraft by defaulting agent in favor of his principal, pursuant to an agreement with the agent, who was attempting to obtain security for a loan, and with expectation that loan would be consummated, *held* not entitled to recover overdraft from principal on theory that principal could not accept benefit of agent's acts in its behalf and deny his authority, or otherwise.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by the First National Bank of Drumright against the Long Bell Lumber Company. Judgment for plaintiff and defendant brings error. Reversed and remanded.

Flavel Robertson, of Kansas City, Mo. (Frank Wells, D. I. Johnston, and W. C. Lee, all of Oklahoma City, Okl., and Jesse Andrews and Carl D. Matz, both of Kansas City, Mo., on the brief), for plaintiff in error.

Ernest B. Hughes, of Sapulpa, Okl. (Earl Foster and Edwin A. Ellinghausen, both of Sapulpa, Okl., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

KENYON, Circuit Judge. Defendant in error, First National Bank of Drumright, a corporation, brought action in the district court of Lincoln county, Okl., against plaintiff in error, Long Bell Lumber Company, a corporation, which action was removed to the federal court, to recover on an alleged overdraft arising by reason of a certain check drawn by one Bowman as the agent and manager of plaintiff in error at Drumright, payable to plaintiff in error, in the sum of $3,823.40, and sent by him to the main office of plaintiff in error at Kansas City, Mo. In due course of banking the check reached defendant in error's bank at Drumright and was paid. At that time plaintiff in error had some money on deposit in said bank, but not sufficient to meet the check  The bank paid the same in full, resulting in an overdrawing of the account of plaintiff in error in the sum of approximately $3,500

A jury was waived and the case tried to the court. An opinion was filed, which purported to contain findings of fact upon which the court decided that defendant in error should recover from plaintiff in error $3,482.50 and interest from the date of the filing of the petition, which amounted to $38.94, making a total of $3,521.44. While specific findings of fact as usually made do not appear in the record, we are satisfied from the language of the court in its opinion and in the judgment that the court intended its opinion to constitute special findings of fact, and we so accept it. The question therefore, presented under the record, is whether or not the conclusion of the court was justified by the findings of fact. There were no exceptions taken thereto. They stand the same as the verdict of a jury.

It is the theory of plaintiff in error that under the findings of fact it was entitled to judgment on the ground that the transaction was in the nature of a loan from the bank to Bowman to enable him to settle with his principal . On the other hand, defendant in error's theory is that the check, payable to the principal, was drawn upon its account by its agent, presented for payment, and the proceeds received by it; that the advancement was made to the principal and not to the agent Bowman, and constituted an ordinary overdraft for which the principal is responsible. The line is therefore clearly drawn.

The trial court found in substance that defendant in error bank knew the full nature of the transaction; that Bowman, manager of plaintiff in error's company at Drum-

right, Okl., was short in funds to be rendered to his principal, and that the bank was willing to assist him in getting the necessary money therefor; that he tried to enter into an arrangement whereby he was to give notes to the bank, signed by others, the proceeds thereof to be placed in plaintiff in error's account, in the sum of $3,500, to cover Bowman's defalcations, and which would take care of the check he was giving against the account. This significant language is used by the court: "In substance the transaction was in the nature of a loan from the bank to Mr. Bowman to enable him to settle with his principal. The bank was to have security and means of repayment to itself. These other parties were to sign the notes aggregating $3,500, but they failed to do it; also, it appears that the money was to be put into the bank in any event by Mr. Bowman to make the bank whole. On the faith of all these things, the bank made the remittance to take care of the overdraft, check Exhibit A, but the bank did not receive what it was to receive. It has not received the security which was promised, and has therefore lost the amount which it advanced and paid to the defendant for and in behalf of Mr. Bowman."

It also said that, if the security had been given, an amount would have been advanced in the way of a loan to meet the check by which Bowman paid his debt to his principal, and that, under such circumstances, "it would be an ordinary case of lending money to a defaulting agent, in order that he might send it to his principal, and the principal would not be concerned in it at all and would not be a party to the transaction. Then the principal would be entitled to retain the money."

The court found that the action could not be maintained as upon an overdraft, saying: "There is no authority in this evidence for such an overdraft, and indeed the bank had sufficient notice so that it would not depend on the right of Mr. Bowman to overdraw the account to the extent of this check, Exhibit A, for $3,823.40." The court also decided that "as a loan from the bank to Bowman the transaction failed," and entered judgment for defendant in error on the theory that plaintiff in error had received this money from the bank, had given nothing for it, and that it would be unconscientious to retain the same.

Considering, then, these findings by the court, some of fact and some of mixed law and fact, was its general conclusion warranted? Of course, if the bank advanced the money to plaintiff in error upon its credit, as claimed by defendant in error, it was an overdraft and there could be recovery back. The trial court found, and we think, correctly, that it was not an ordinary overdraft. If the advancement was in the nature of a loan to Bowman upon his credit, then the conclusion of the court awarding recovery to defendant in error was wrong.

The findings of the court, well sustained by the evidence, seem to show that the cashier of defendant in error bank, one Hayes, discussed with plaintiff in error's agent, Bowman, the matter of a loan to him of $3,500, which Hayes claims he did not know was to cover Bowman's defalcations, but which it was clear he must have known was to assist Mr. Bowman in some manner in his own personal affairs. Arrangement was made for notes to be given by Bowman to the bank to cover this $3,500. Some of the parties who were to sign the notes as sureties did so; others did not. Had they signed the notes, his account would have been credited with the proceeds thereof. Under such circumstances had he drawn a check to his principal upon defendant in error and the same had been paid by it, no serious contention would be made that defendant in error could recover the amount of said check from plaintiff in error, if Bowman or the sureties on the notes given to the bank failed to pay them.

The court found that the bank knew the full nature of the transaction. It therefore knew that Bowman had no authority to make an overdraft in the nature of a loan, nor to borrow by using the name of his principal to cover a shortage in his accounts. The bank knew that the check was sent as a remittance of funds supposed to be in the bank and belonging to plaintiff in error. It furnished this money to Bowman with full knowledge of all the facts to enable him to pay his principal. The principal did not know these facts, and, had the security been given on the notes, probably never would have known them. This transaction was a matter of business between Bowman and the defendant in error bank, not participated in by plaintiff in error.

As substantiating somewhat the claim that credit was extended to Bowman is the fact that the check was not charged against the lumber company for about five weeks. The bank knew of Bowman's shortage, knew he was trying to secure signers for the notes left with the bank, and for five weeks acquiesced in this situation and did not notify plaintiff in error, during which time Bow-

man's defalcations increased somewhat. Under these circumstances, it seems clear to us that the bank is not in position to recover the amount from plaintiff in error which it had advanced on the credit of Bowman under an arrangement with him, partially carried out, to borrow money and place it in plaintiff in error's account to protect the bank against the check in question.

The vital and determinative factor in this case, gathered from the findings of fact by the court, is that the payment by the bank on the check did not constitute an overdraft because it was not made on the principal's credit or for its benefit. It was in fact, whatever it may be termed, a loan or advancement to pay Bowman's debt to plaintiff in error; and, while the money was not turned over to him, it was paid to the principal in pursuance of some arrangement between Bowman and the bank, of which it had no knowledge.

It is earnestly contended that the principal cannot accept the benefit of an agent's acts in its behalf and then claim that the agent was acting beyond his authority. Of course, this is true; but the act here of the agent was not in behalf of the principal. It was an act in behalf of himself, and the question of a principal profiting by the act of the agent and then repudiating his authority is not involved. The defendant in error is not entirely an innocent party in the transaction. It kept from plaintiff in error the knowledge that it possessed of Bowman's situation. Plaintiff in error was an entirely innocent party. It might have protected itself to some extent, at least, had the bank notified it of the situation, as the evidence shows that the defalcation of Bowman increased somewhat during the time the bank was holding off and Bowman was trying to make a "killing."

The trial court found that as a loan from the bank to Bowman the transaction failed. This may be technically correct, as all the sureties agreed upon did not sign the notes given to the bank. However, at the time the advancement was made for the purpose of paying Bowman's indebtedness to his principal, the agreement for the loan existed and the advancement was made by the bank in pursuance of said agreement and with the expectation that the loan would be fully consummated. On the strength of that expectation credit was in fact extended to Bowman. The simple conclusion of the whole matter is that Mr. Hayes, cashier of the bank, expecting the consummation of

1 F.(2d)—9

the loan, advanced the money for the benefit of Bowman to pay the check in question, relying on Bowman to repay the same. The bank advanced the money at its peril.

In our opinion, the conclusion of the court rendering judgment in favor of defendant in error was erroneous. Under the findings of fact, judgment should have been rendered in favor of plaintiff in error. The judgment is reversed, and the case remanded.